**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 1:24-CV-20172-GAYLES**

**J&N RECORDS LLC, J&N PUBLISHING LLC, 829MUSIC MUNDIAL LLC, and MAYIMBA MUSIC, INC.,**

**Plaintiffs,**

**v.**

**HARLEY BOYS ENTERTAINMENT, LLC d/b/a ROAD RUNNER ENTERTAINMENT INC., HBE MEDIA HOLDINGS, INC., and LUIS ALFREDO SILVERIO a/k/a LUIGUI BLEAND,**

**Defendants.**
________________________________________/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This cause came before the Court on Plaintiffs' Motion for Summary Judgment Against Luis Alfredo Silverio a/k/a Luigui Bleand ("Motion"). [ECF No. 91]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons below, the Motion is granted.

## BACKGROUND

In this action, Plaintiffs J&N Records LLC ("J&N Records"), J&N Publishing LLC ("J&N Publishing"), 829Music Mundial LLC ("829Music"), and Mayimba Music, Inc. ("Mayimba") (collectively "Plaintiffs") contend that Harley Boys Entertainment, LLC d/b/a Road Runner Entertainment, Inc. ("Harley Boys"), HBE Media Holdings, Inc. ("HBE") (together, "Harley Defendants") and Luis Alfredo Silverio a/k/a Luigui Bleand ("Silverio")[1] (collectively

[1] Silverio is the founder and chief executive officer of Harley Boys and the chief executive officer of HBE. [ECF No. 92 ¶ 38].

"Defendants") infringed Plaintiffs' copyrights by exploiting certain sound recordings and musical compositions without authorization. Based on the record, the Court agrees.

## I. Factual Background[2]

### A. The Copyrights

Plaintiffs J&N Records and 829Music are record companies that produce, distribute, sell, license, and facilitate the distribution of sound recordings. Plaintiffs J&N Publishing and Mayimba are music publishers. Together, Plaintiffs own or hold the exclusive rights to distribute and administer dozens of sound recordings and musical compositions (the "Copyrighted Works"). [ECF Nos. 92 ¶¶ 1, 2]. In addition, 829Music controls certain works by Linar De Jesus Espinal Nunez (the "El Chaval Works"), and J&N Publishing controls certain works by Chico Severino (the "Severino Works") (collectively, the "Additional Copyrighted Works"). *Id.* ¶¶ 3, 5. Plaintiffs are the exclusive holders of certificates of registration from the U.S. Copyright Office for the Copyrighted Works and Additional Copyrighted Works. *Id.* ¶¶ 19.

It is undisputed that Silverio and the Harley Defendants did not obtain Plaintiffs' permission to exploit, reproduce, distribute, or otherwise use the Copyrighted Works or Additional Copyrighted Works. They had no agreements with Plaintiffs or with the relevant artists or songwriters authorizing such use; no express or implied license; and no license from Plaintiffs to distribute the works. *Id.* ¶¶ 8, 11-14, 17–18, 26.

---

[2] The facts are drawn from Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SOMF"), [ECF No. 92], which the Court deems admitted due to Silverio's failure to file a response in opposition. [ECF No. 130]. The Requests for Admission supporting the SOMF are also deemed admitted because Silverio did not respond to them. *See* Federal Rule of Civil Procedure 36; *Perez v. Miami-Dade Cnty.,* 297 F.3d 1255, 1264 (11th Cir. 2002). Magistrate Judge Louis denied as moot Silverio's motion to withdraw his admissions because he did not attach responses to the Requests for Admission. *See* [ECF No. 125]. In any event, even if Silverio had filed a procedurally proper motion, withdrawal of the admissions would be unwarranted because it would prejudice Plaintiffs, particularly since discovery closed months ago.

### B. The Infringement

On July 14, 2021, Harley Boys entered into a distribution agreement (the "Distribution Agreement") with Warner Music Latina Inc. and/or ADA Latin ("Warner Music"). *Id.* ¶ 27. Silverio negotiated the Distribution Agreement on Harley Boys' behalf. *Id.* ¶ 29. In connection with that agreement, Harley Boys provided Warner Music a catalogue for distribution that included Plaintiffs' Copyrighted Works. *Id.* ¶ 30.

Relying on Silverio's representations concerning Harely Boys' rights in the catalogue, Warner distributed Plaintiffs' Copyrighted Works to various digital platforms, including Spotify, Qobuz, Amazon, and YouTube. *Id*. ¶ 28. Warner later terminated the Distribution Agreement after learning that Harely Boys had no rights in the Copyrighted Works. *Id.* ¶ 34.

Silverio's unauthorized distribution of Plaintiffs' works continued after the Warner distribution. On January 22, 2023, Silverio caused several sound recordings owned or controlled by 829 Music to be posted on YouTube without authorization. *Id.* ¶ 33. Silverio and HBE also provided the Copyrighted Works and the Additional Copyrighted Works to Ditto Music Ltd. ("Ditto"), even though they had neither authorization nor licenses to do so. *Id.* ¶¶ 35-37. It is undisputed that Defendants knew of Plaintiffs' ownership of the Copyrighted Works and Additional Copyrighted Works when Defendants began exploiting them, and that Defendants in fact exploited those works. *Id.* ¶¶ 20–21.

## II. Procedural Background

On January 16, 2024, Plaintiffs filed this action against Warner Music Latina Inc., Warner Music Group Corp. d/b/a ADA Latin (together, "Warner"),[3] Harley Boys, and Silverio. [ECF No. 1]. On July 3, 2024, Plaintiffs filed an Amended Complaint against the Harley Defendants and

[3] On May 31, 2024, Plaintiffs voluntarily dismissed Warner with prejudice pursuant to a settlement between Plaintiffs and Warner. [ECF No. 30].

Silverio asserting claims for direct copyright infringement (Count I), contributory copyright infringement (Count II), and vicarious copyright infringement (Count III). [ECF No. 38]. Plaintiffs seek (1) statutory damages for 40 of the Copyrighted Works and Additional Copyrighted Works that Silverio and Harley Boys infringed and (2) injunctive relief. *See* [ECF Nos. 92 ¶ 7; 92-2 (identifying works)]. Defendants filed their answer and affirmative defenses on July 30, 2024. [ECF No. 44].

On November 7, 2024, the Court granted defense counsel's motion to withdraw. [ECF No. 51]. Because the Harley Defendants, as corporate entities, are required to be represented by counsel, the Court ordered them to obtain new counsel on or before December 6, 2024. *Id.* They failed to do so, and the Court entered defaults against them. [ECF No. 54].

The case against Silverio proceeded. Plaintiffs served discovery requests on Silverio, who repeatedly failed to respond. *See e.g.* [ECF No. 64]. On June 9, 2025, following the continuance of an initial settlement conference with Magistrate Judge Lauren F. Louis, the law firm of Barakat + Bossa entered an appearance on behalf of Defendants. [ECF Nos. 77-79]. On July 31, 2025, after the parties reached a settlement, [ECF No. 113], the Court administratively closed the case and denied all pending motions as moot, [ECF No. 114].

The settlement, however, fell apart and, on September 10, 2025, the Court permitted Barakat + Bossa to withdraw as counsel for Defendants. [ECF No. 122]. In its Order granting the withdrawal, the Court directed the Harley Defendants to obtain new counsel on or before October 10, 2025, and Silvero to either obtain new counsel or notify the Court that he intends to represent himself (the "Withdrawal Order"). *Id.* Notably, the Court cautioned Defendants that failure to comply with the Withdrawal Order would "create a presumption that Defendants no longer wish

to participate in this lawsuit" and could result in sanctions against them. *Id.* Defendants did not comply with the Withdrawal Order.

On September 10, 2025, Plaintiffs moved to reopen the case and renew their Motions for Summary Judgment and for Default Judgment. [ECF No. 121]. On September 16, 2025, the Court reopened the case. [ECF No. 123]. Silverio filed no timely response to the renewed Motion for Summary Judgment, and the Court denied his later request for leave to submit one. [ECF No. 130].

## STANDARD OF REVIEW

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And "[a]n issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (internal quotation omitted).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must

make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## ANALYSIS

Plaintiffs raise claims for copyright infringement, contributory copyright infringement, and vicarious copyright infringement. As detailed below, the Court finds that there are no genuine issues as to any material fact and Plaintiffs are entitled to judgment as a matter of law on all of their claims.

### I. Direct Copyright Infringement

To establish direct copyright infringement, Plaintiffs must prove (1) ownership of a valid copyright or an exclusive right under copyright, and (2) that the defendant violated one of the owner's exclusive rights under 17 U.S.C. § 106. *See Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002). Among those exclusive rights are the rights to reproduce copyrighted works; distribute copies or phonorecords to the public; and, in the case of sound recordings, publicly perform the work by digital audio transmission. 17 U.S.C. § 106 (1), (3), (6).

Plaintiffs have established the ownership element. The undisputed facts show that Plaintiffs own or hold the exclusive distribution and administration rights to the Copyrighted Works and Additional Copyrighted Works and that the works are registered with the United States Copyright Office. [ECF No. 92 ¶¶ 3, 5, 15–16, 19; ECF No. 92-1].

Plaintiffs have also established that Silverio personally participated in the unauthorized exploitation of those works. Silverio negotiated the Distribution Agreement for Harley Boys and caused Harley Boys to provide Warner with a catalogue that included Plaintiffs' Copyrighted Works. He represented that Harley Boys had authority to distribute that catalogue. Warner relied on this representation in distributing the works to digital platforms, including Spotify, Qobuz,

Amazon, and YouTube. [ECF No. 92 ¶¶ 27–30]. Silverio also, without authorization, caused sound recordings owned or controlled by 829Music to be posted to YouTube on January 22, 2023, and he and HBE provided the Copyrighted Works and Additional Copyrighted Works to Ditto for distribution. *Id.* ¶¶ 33, 35–37.

This is sufficient to establish direct infringement by Silverio. Although Silverio acted through the Harley Defendants, his individual liability rests on his own knowing and active participation in the infringing conduct: negotiating the distribution arrangement, making the representations concerning rights in the catalogue, submitting or causing the submission of Plaintiffs' works for exploitation, and causing or participating in their unauthorized distribution. Indeed, his status as an officer is not the basis for liability; liability follows from his personal involvement in the acts that infringed Plaintiffs' exclusive rights.

The record further establishes that Silverio had no express or implied license to exploit the Copyrighted Works or Additional Copyrighted Works; did not obtain Plaintiffs' permission to do so; and knew of Plaintiffs' ownership interests when Defendants began exploiting the works. *See id.* ¶¶ 8, 11–14, 17–18, 20–21, 26. Accordingly, the distributions and postings were unauthorized.

Finally, the record supports a finding that Silverio's infringement was willful. He knew of Plaintiffs' asserted ownership rights yet continued to cause the works to be exploited without a license.[4]

Silverio has identified no evidence creating a genuine dispute of material fact as to ownership, authorization, or his personal participation, and he has established no viable affirmative

[4] Willfulness is not required to establish liability under Count I, but it is relevant to the Court's determination of statutory damages and attorney's fees. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312, 1316 (S.D. Fla. 2003).

defense.[5] Accordingly, Plaintiffs are entitled to judgment as a matter of law against Silverio on Count I.

## II. Contributory Copyright Infringement

To establish their claim for contributory copyright infringement, Plaintiffs must show "(1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement." *ABS-CBN Corp. v. movieonline.io,* No. 17-cv-61803, 2017 WL 10741687, at *4 (S.D. Fla. Nov. 30, 2017).[6]

The undisputed record establishes each element as to the direct infringement committed by Warner and Ditto. First, Warner directly infringed when it distributed Plaintiffs' Copyrighted Works to digital platforms, including Spotify, Qobuz, Amazon, and YouTube, without Plaintiffs' authorization. Likewise, Ditto directly infringed when it distributed the Copyrighted Works and Additional Copyrighted Works. *See* [ECF No. 92 ¶¶ 28, 35–37]. Warner's alleged lack of knowledge does not defeat the predicate act of direct infringement**.**

Second, Silverio knew that Warner's and Ditto's distributions were unauthorized. The undisputed facts establish that Silverio knew of Plaintiffs' ownership interests when Defendants began exploiting the works, knew that neither he nor the Harley Defendants possessed a license or other authorization to distribute them, and nevertheless provided the works for distribution. *See id.* ¶¶ 8, 11–14, 17–18, 20–21, 26.

---

[5] As detailed above, Silverio's failure to respond to Plaintiffs' requests for admissions means that the requests are admitted. In addition, Silverio's failure to timely respond to Plaintiffs' SOMF deems those facts admitted as well.

[6] Although the Copyright Act does not expressly provide for liability for infringement committed by another, "the[ ] doctrines of secondary liability emerged from common law principles and are well established in the law." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

Third, Silverio intentionally induced, encouraged, and materially contributed to the distributors' infringement. Silverio negotiated the Distribution Agreement on Harley Boys' behalf, represented that Harley Boys had authority to license the submitted catalogue, and caused Harley Boys to deliver Plaintiffs' Copyrighted Works to Warner for digital distribution. *See id.* ¶¶ 27–30. That conduct supplied the means and authorization on which Warner relied in disseminating the works. Silverio and HBE similarly provided the Additional Copyrighted Works to Ditto, knowing that Ditto would distribute them and lacking any authorization to do so. *See id.* ¶¶ 35–37. These acts constitute intentional inducement and material contribution.

Accordingly, there are no genuine disputes of material fact, and Plaintiffs are entitled to judgment as a matter of law against Silverio on Count II.

## III. Vicarious Copyright Infringement

To establish their claim for vicarious copyright infringement, Plaintiffs must show Silverio had both "the ability to supervise the infringing activity" and "a financial interest in that activity[.]" *Playboy Enters., Inc. v. Starware Pub. Corp.*, 900 F. Supp. 438, 440-41 (S.D. Fla. 1995). The control element requires more than general influence: the defendant must have a "legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2014 WL 7272974, at *5 (S.D. Fla. Dec. 18, 2014) (quoting *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1173 (9th Cir. 2007).

The undisputed facts establish Silverio's right and ability to supervise the infringing activity. Silverio was the founder and Chief Executive Officer of Harley Boys and the Chief Executive Officer of HBE. [ECF No. 92 ¶ 38]. He personally negotiated Harley Boys' Distribution Agreement with Warner, selected or caused the submission of the catalogue that included

Plaintiffs' works, and made the representations on which Warner relied in distributing that catalogue. He therefore had both the authority and practical ability to prevent the infringement by withholding the works, correcting the asserted rights, terminating or modifying the authorization to distribute, or directing the Harley Defendants not to furnish the works to Warner and Ditto. Instead, he caused the works to be supplied for distribution despite knowing that no license existed. *See id.* ¶¶ 8, 11–14, 17–18, 20–21, 26–30, 35–38.

The record also establishes that Silverio had a direct financial interest in the infringing activity. The Distribution Agreement was an agreement between Harley Boys and Warner under which Warner distributed the Harley Boys catalogue, including Plaintiffs' works. Silverio, as Harley Boys' founder and chief executive officer, negotiated that agreement and stood to benefit from the exploitation of the catalogue through the enterprise he controlled. His financial interest was therefore not incidental: it arose directly from the unauthorized distribution he arranged and had authority to stop. *See id.* ¶¶ 27–30, 38. The same conclusion follows from his role in causing HBE and Ditto to exploit the Additional Copyrighted Works. *See id.* ¶¶ 35–38.

Accordingly, Plaintiffs have established both elements of vicarious liability, and there is no genuine dispute of material fact. Plaintiffs are entitled to judgment as a matter of law against Silverio on Count III.

**IV. Damages**

Instead of proving actual injury, a plaintiff in a copyright infringement action may choose to recover statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for each infringed work. 17 U.S.C. § 504(c)(1). Plaintiffs have elected statutory damages for 40 infringed on works.

**V. Attorney's Fees**

"Section 505 of the Copyright Act expressly authorizes courts to award full costs, which may include reasonable attorney's fees, to the prevailing party." *Arista Recs.*, 298 F. Supp. 2d at 1315. "Although discretionary, courts have frequently awarded Plaintiffs their full costs and attorney's fees in order to: (1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." *Id.* (internal quotation omitted).

The Court finds that Plaintiffs are entitled to their attorney's fees and costs. Indeed, the record establishes that Silverio willfully infringed on Plaintiffs' copyrights. *Id.* (holding that "a showing of willfulness . . . provides further justification for such an award).

**CONCLUSION**

For these reasons, it is **ORDERED AND ADJUDGED** that

1. Plaintiffs' Motion for Summary Judgment Against Luis Alfredo Silverio A/K/A Luigui Bleand, [ECF No. 91], is granted.
2. In accordance with Federal Rule of Civil Procedure 58(a), final judgment will be entered separately.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of August, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE